In the Interest of WM, a Minor Child.

JW, Appellant (Respondent),

v.

STATE of Wyoming, ex rel. LARAMIE COUNTY DEPARTMENT OF PUBLIC ASSISTANCE AND SOCIAL SERVICES, Appellee (Petitioner).

No. C–88–13.

Supreme Court of Wyoming.

Aug. 1, 1989.

Rehearing Denied Aug. 25, 1989.

Douglas J. Mickey, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Richard E. Dixon, Asst. Atty. Gen., for appellee.

Rodger McDaniel, McDaniel & Tiedeken, Cheyenne, guardian ad litem.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The issue to be resolved in this case is whether a misinterpretation or misapplication of a statute relating to the entry of a decree of disposition placing a child in accordance with the statutes relating to juvenile courts deprived the court of jurisdiction and caused its decree to be void. The question is presented in the context of the claim of the appellant, the child's grandmother, that the district court sitting as the juvenile court erred in denying her motion

to vacate the decree pursuant to Rule 60(b), W.R.C.P.[1] After entering the decree, which placed the child with his great-aunt, the appellant's sister, in Arizona, the juvenile court judge denied the relief sought by appellant. No appeal was taken from the decree itself and, in accordance with the rule, it became final. The only question is raised by the denial of the motion for relief under Rule 60(b), W.R.C.P. We hold that the juvenile court was vested with jurisdiction in this case, and nothing occurred in the proceeding to deprive that court of jurisdiction. The ruling of the juvenile court in its Order Denying Motion to Vacate Orders is affirmed.

In her brief, the appellant states the issues to be:

"1. Whether the trial court abused its discretion in failing to vacate its Order for Custody entered July 24, 1987, on the ground that said Order is void as a result of the trial court's failure to adhere to the requirements of WYO.STAT.ANN. § 14-6-229(a), as amended.

"2. Whether the trial court abused its discretion in failing to vacate its Amended Order of Custody Order to Dismiss entered May 5, 1988, on the ground that said Order is void as a result of the trial court's failure to adhere to the requirements of WYO.STAT.ANN. § 14-6-229(a), as amended.

"3. Whether the trial court abused its discretion in failing to vacate its Order of October 23, 1986 and all subsequent orders of the trial court, on the ground that said orders are void for lack of subject matter jurisdiction as required under WYO.STAT.ANN. § 14-6-203."

As appellee, the Laramie County Department of Public Assistance and Social Services (DPASS) responds by stating the following propositions:

"I. The juvenile court exercised its powers in compliance with statutory charter following an adjudication of neglect which appellant does not contest.

"II. The juvenile court has jurisdiction in all matters commenced therein concerning a minor alleged to be delinquent, which jurisdiction persists until dismissal or discharge.

"III. Appellant has benefited from all process due such a litigant; her appeal is occasioned not by a search for equity but by the desire for a different result."

The guardian ad litem appeared on behalf of the juvenile, WM, and, in a brief, posed these responses to the issues stated by the appellant:

"I. Is the order of the district court of October 23, 1986 subject to challenge under Rule 60(b) of the Wyoming Rules of Civil Procedure?

"II. Did the trial court abuse its discretion in denying appellant's motion to vacate its orders of October 23, 1986?

"III. Did the trial court abuse its discretion in denying appellant's motion to vacate its orders of July 24, 1987 and May 5, 1988?"

The length of this proceeding in the juvenile court has resulted in the facts being both intricate and complex. On October 5, 1984, a petition was filed in the juvenile court by the district attorney's office alleging that WM was a neglected child as defined by § 14-6-201(a)(xvi)(B), W.S.1977 (1984 Cum.Supp.).[2] The specific conduct alleged in the petition was that:

---

1. Rule 60(b), W.R.C.P., provides, in pertinent part, as follows:

    "(b) *Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.*— On motion, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (4) the judgment is void; * * *. The motion shall be made within one (1) year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation."

2. Section 14-6-201(a)(xvi), W.S.1977 (1984 Cum.Supp.), provides, in pertinent part:

    "(a) As used in this act:

         *    *    *    *    *    *

    "(xvi) 'Neglected child' means a child:

         *    *    *    *    *    *

    "(B) Who has been abused by the inflicting or causing of physical or mental injury, harm or imminent danger to the physical or mental health or welfare of the child, other than by accidental means, including abandonment, excessive or unreasonable corporal punishment, malnutrition or substantial risk thereof

" * * * [O]n or about the 2nd day of September, 1984, [RC], the boyfriend of [JW, the child's mother], spanked said child with a hard object resulting in several serious bruises to the minor child's buttocks and [JW] knew of said abuse and failed to report the same or to take proper measures to protect her minor child."

The allegations of the petition were admitted, and the juvenile court ordered DPASS to prepare pre-disposition studies on both the mother and appellant, who is the mother's mother. After considering the studies, the juvenile court, on April 15, 1985, entered its order finding that WM was a neglected child and placing him in the custody of his mother, subject to the protective supervision of DPASS. This order was not challenged by appeal or otherwise, and that was the status quo until March 21, 1986.[3]

On March 21, 1986, WM's mother was killed in a motorcycle/automobile accident. WM, together with two siblings, was taken in by the appellant, although she never became the formal custodian of the children by guardianship, adoption, or otherwise. Appellant had cared for her daughter's children previously, and she simply continued to do so after her daughter's death. Ultimately, other arrangements were made for the care of the two siblings, and only WM remained with appellant. DPASS continued its protective supervision under the April 15, 1985 order of the juvenile court, and it soon concluded that appellant was not able to furnish proper care for WM. On September 4, 1986, DPASS filed an Amended Petition in the same case file as the original neglect petition in which it alleged that WM was a neglected child as defined by § 14-6-201(a)(xvi)(A) (July 1986 Repl.).[4] Summarized briefly, the allegations of the Amended Petition were:

1. WM's mother was deceased, and her husband, the boyfriend who had abused WM, was in prison.

2. WM's putative natural father also was in prison.

3. WM had no natural guardian to provide care for him.

4. No person, institution, or agency having any responsibility for WM's welfare and also having legal custody pursuant to court order was available to provide for his care, custody, and control.

5. DPASS was required by the existing court order to supervise WM's care.

---

by reason of intentional or unintentional neglect, and the commission or allowing the commission of a sexual offense against a child as defined by law:
"(I) 'Mental injury' means an injury to the psychological capacity or emotional stability of a child as evidenced by an observable or substantial impairment in his ability to function within a normal range of performance and behavior with due regard to his culture;
"(II) 'Physical injury' means death or any harm to a child including but not limited to disfigurement, impairment of any bodily organ, skin bruising, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition;
"(III) 'Substantial risk' means a strong possibility as contrasted with a remote or insignificant possibility;
"(IV) 'Imminent danger' includes threatened harm and means a statement, overt act, condition or status which represents an immediate and substantial risk of sexual abuse or physical or mental injury."

3. Section 14-6-231, W.S.1977, (1985 Cum. Supp.), provides, in pertinent part:
         *     *     *     *     *     *

"(b) An order of disposition shall remain in force for an indefinite period until terminated by the court whenever it appears the purpose of the order has been achieved and it is in the child's best interest that he be discharged from further court jurisdiction.
"(c) Unless sooner terminated by court order, all orders issued under this act [§§ 14-6-201 through 14-6-243] shall terminate with respect to a child adjudicated:
"(i) Neglected, when he reaches eighteen (18) years of age or has graduated from high school; * * *."

4. Section 14-6-201(a)(xvi)(A), W.S.1977 (July 1986 Repl.), provides:
"'Neglected child' means a child:
"(A) Whose custodian has failed or refused to provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well being. Treatment given in good faith by spiritual means alone, through prayer, by a duly accredited practitioner in accordance with the tenets and practices of a recognized church or religious denomination is not child neglect for that reason alone; * * *."

6. DPASS had concluded that appellant was unable to provide proper care for WM.

7. In the five months since the death of WM's mother, no provision had been made to more permanently place him with a legal custodian.

A copy of this Amended Petition was served upon the appellant, and she appeared to defend her interests. On October 23, 1986, the juvenile court entered an order in which it found that WM was a neglected child, and it placed him temporarily in the custody of appellant, pending completion of studies of several prospective homes. These studies, conducted by both DPASS and the guardian ad litem, supported a conclusion that it would not be in the best interests of WM to place him with appellant. A hearing was held and, on July 24, 1987, the juvenile court entered an order providing that WM should be placed with his great-aunt, the appellant's sister, still under the continued supervision of DPASS. The designated custodian lived in Arizona with her husband.

On March 28, 1988, the guardian ad litem filed a motion seeking final disposition of WM's case. The juvenile court, with all parties except the appellant in agreement, concluded that any additional legal proceeding such as the seeking of a guardianship or adoption would have to be pursued in Arizona and that the case, therefore, was ripe for final disposition by dismissal by the Wyoming court. The appellant filed a resistance to the guardian ad litem's motion in which she asserted that the juvenile court was without subject matter jurisdiction to enter the requested order. At a hearing conducted before the juvenile court on April 8, 1988, appellant argued at length her theories for the lack of jurisdiction in the district court. Through counsel, she contended that the court was without jurisdiction because there was no finding in the order entered on July 24, 1987 that WM was neglected. The second theory presented was that the juvenile court was without jurisdiction to place the child in the permanent custody of the great-aunt. Having considered these arguments, the juvenile court rejected them and, on April 21, 1988, entered an Order Continuing Custody Order to Dismiss, that was followed by an Amended Order of Custody Order to Dismiss, pursuant to which WM was placed in the physical and legal custody of the great-aunt and her husband, and the juvenile petition in the case was dismissed. No appeal was taken from either order.

On July 12, 1988, appellant filed a Motion to Vacate Orders accompanied by a Brief in Support of Motion to Vacate Orders in which the orders of the court entered on July 24, 1987 and May 5, 1988 were attacked relying upon Rule 60(b), clause (4), W.R.C.P. In its opinion letter, in which the history of the proceeding was reviewed, the juvenile court concluded it had jurisdiction to enter the challenged orders and, on October 14, 1988, it entered its order denying the relief requested by appellant. This appeal is taken from the latter order.

Appellant invokes the abuse of discretion standard for testing the order of the juvenile court from which the appeal was taken. That claim is bolstered by arguments addressed to the impropriety of the orders attacked by the motion for relief under Rule 60(b), W.R.C.P., urging an abuse of discretion with respect to those orders. The normal standard for testing orders denying relief under Rule 60(b), W.R.C.P., is abuse of discretion. *R.L. Manning Company v. Millsap*, 687 P.2d 252 (Wyo.1984); C. Wright and A. Miller, Federal Practice and Procedure, Civil § 2862 (1973). When the claim for relief is premised under Rule 60(b), clause (4), W.R.C.P., however, the rule is different. As the text says, "[e]ither a judgment is void or it is valid. Determining which it is may well present a difficult question, but when that question is resolved, the court must act accordingly." C. Wright and A. Miller, Federal Practice and Procedure, Civil § 2862 at 197. Because Rule 60(b), W.R.C.P., is the same as Rule 60(b), F.R.C.P., we consider federal precedent highly persuasive. *2–H Ranch Company, Inc. v. Simmons*, 658 P.2d 68 (Wyo.1983). Consistently with federal precedent, we have held that a court has no discretion in granting or denying relief pursuant to a motion brought under Rule

60(b), clause (4), if it determines the judgment or order was void. Once that determination is made, the court must vacate the order or judgment. *State of Wyoming, ex rel. TRL by Avery v. RLP*, 772 P.2d 1054 (Wyo.1989); *Lawrence–Allison & Associates West, Inc. v. Archer*, 767 P.2d 989 (Wyo.1989).

■ The burden is upon the movant, in this instance the appellant, seeking relief under Rule 60(b), clause (4), W.R.C.P., to establish entitlement to the relief of vacation of a void order or judgment. *Atkins v. Household Finance Corporation of Casper, Wyoming*, 581 P.2d 193 (Wyo.1978); *Martellaro v. Sailors*, 515 P.2d 974 (Wyo. 1973); *Turnbough v. Campbell County Memorial Hospital*, 499 P.2d 595 (Wyo. 1972). A party cannot carry that burden by establishing no more than that the orders sought to be attacked were erroneous, and they could only be considered void if the court lacked jurisdiction over the parties or the subject matter of the dispute, or if it acted in a manner inconsistent with due process. *Williams v. Life Savings & Loan*, 802 F.2d 1200 (10th Cir.1986); *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220 (10th Cir.1979); *In re Four Seasons Securities Laws Litigation*, 502 F.2d 834 (10th Cir.1974), cert. denied sub nom. *Ohio v. Arthur Anderson and Company*, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974); 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 60.25[2], at 60–236 (2d ed. 1987); C. Wright & A. Miller, Federal Practice & Procedure, Civil § 2862 at 198–200.

The legal principles invoked to determine the issues raised in this case are summarized in *Kansas City Southern Railway Company v. Great Lakes Carbon Corporation*, 624 F.2d 822 (8th Cir.1980), cert. denied 449 U.S. 955, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980). The essence of that summary is that a judgment is void only when there has been a plain usurpation of power, or the extension of jurisdiction beyond the scope of the court's authority. That is to be distinguished from an error in the exercise of the jurisdiction of the court, which must be addressed by appeal rather than a motion under Rule 60(b). The competing policies are a disciplined observance of jurisdictional limits coupled with the need for finality of judgments. If the court concludes that the challenge is simply to an erroneous interpretation of the statutory grant of jurisdiction, then, in favor of the policy of certainty and finality, the judgment becomes final unless appealed.

It is our conclusion that, in this case, the question presented by the appellant reaches, at most, the level of error in the exercise of jurisdiction. Thus, the principles articulated in *United Mine Workers of America Local 1972 v. Decker Coal Company*, 774 P.2d 1274 (1989), relating to the lack of subject matter jurisdiction need not be invoked. The essence of appellant's position is that the district court misconstrued the language of the pertinent statutes. Reliance is premised upon the requirement found in § 14–6–229(a), W.S. 1977, that "[w]hen a child is adjudged to be neglected or in need of supervision, the court shall insure that reasonable efforts were made by the field office of the Division of Public Assistance and Social Services to prevent or eliminate the need for removal of the child from *his home* or to make it possible for the child to return to *his home*. Before placing a child outside of *the home*, the court shall find by clear and convincing evidence that to return the child to *his home* would not be in the best interest of the child despite efforts that have been made." (Emphasis added.) Appellant contends that the record contains no clear and convincing evidence that leaving the child with her would be contrary to his best interests.

Appellant's position depends upon her assumption that the reference in the statute to "his home" and "the home" define his living situation with her. She argues in support of this position that because the district court did not have before it sufficient facts to permit the findings required by § 14–6–229(a), W.S.1977, it did not have subject matter jurisdiction over the custody of WM. The statute upon which the appellant relies encompasses the following provisions:

"When a child is adjudged by the court to be neglected, delinquent or in need of supervision, the court shall enter its decree to that effect and make a disposition as provided in this section that places the child in the least restrictive environment consistent with what is best suited to the protection of the public safety and interest, the public interest of preserving families, the physical, mental and moral welfare of the child and in accord with the actual facilities presently available when the decree is entered. When a child is adjudged to be neglected or in need of supervision, the court shall insure that reasonable efforts were made by the field office of the division of public assistance and social services to prevent or eliminate the need for removal of the child from his home or to make it possible for the child to return to his home. Before placing a child outside of the home, the court shall find by clear and convincing evidence that to return the child to his home would not be in the best interest of the child despite efforts that have been made." Section 14-6-229(a), W.S.1977.

■ Appellant seeks to categorize the problem as a procedural deficiency which is so serious as to void the orders attacked by the motion for a new trial. When her position is stripped of its verbiage and sophistry, however, it raises only the question of whether the juvenile court properly construed the meaning of the phrase "his home" or "the home." Appellant does not contend that the court failed to make any findings pursuant to § 14-6-229(a), but she only insists that it erred in making those findings with respect to the home that she provided for WM. In essence, her argument is that the statutory term is limited in its meaning to the most recent residence of the child found to be neglected. She presents a similar argument with respect to the jurisdiction of the court to issue any of its orders regarding the amended petition. Her contention that the court could only assume jurisdiction if WM were alleged to be a "neglected child" as that term is defined by § 14-6-201(a)(xvi) is correct. This contention, though, ignores the continuing jurisdiction of the juvenile court under the original petition. Appellant argues that, because the amended petition failed to allege neglect and because it should have alleged that she, as WM's most recent caretaker, had neglected the child, the jurisdiction of the juvenile court was not invoked by the amended petition. This argument again is premised upon her construction of the statutory terminology. The juvenile court adopted a contrary construction.

The district court, sitting as the juvenile court, had jurisdiction over the subject matter, in this instance, pursuant to § 14-6-203, W.S.1977 (July 1986 Repl.).[5] The juvenile court had the power to hear and determine the general class of cases to which this proceeding belongs. See *State v. Board of County Commissioners of Johnson County*, 642 P.2d 456 (Wyo.1982); *Fuller v. State*, 568 P.2d 900 (Wyo.1977). It did have personal jurisdiction over WM. Consequently, appellant raises simply an issue of an erroneous interpretation of the statutes found in Title 14 relating to the

5. Section 14-6-203, W.S.1977 (July 1986 Repl.), provides, in pertinent part:

"(a) The court has general jurisdiction in all matters and proceedings commenced therein or transferred to it by order of the district court concerning:
"(i) Any minor alleged to be delinquent, neglected or in need of supervision as defined in W.S. 14-6-201;
"(ii) Any minor alleged to have committed a delinquent act before attaining the age of majority; and
"(iii) The parents, guardian or custodian of any minor alleged to be delinquent, neglected or in need of supervision.

"(b) Coincident with proceedings concerning a minor alleged to be delinquent, neglected or in need of supervision, the court has jurisdiction to:
"(i) Determine questions concerning the right to legal custody of the minor;
"(ii) Order any party to the proceedings to perform any acts, duties and responsibilities the court deems necessary; or
"(iii) Order any party to the proceedings to refrain from any act or conduct the court deems detrimental to the best interest and welfare of the minor or essential to the enforcement of any lawful order of disposition of the minor made by the court."

jurisdiction of the district court in juvenile matters.

We are sensitive to the fact that the appellant wants to complain of an abuse of discretion by the juvenile court with respect to the custody orders relating to WM. While that matter is not in issue before us, we have failed to perceive any abuse of discretion by the district court in disposing of this case on the merits.

█ The district court properly denied the appellant's motion pursuant to Rule 60(b), W.R.C.P., because the errors upon which appellant premises her contentions could not reach the status of a jurisdictional defect. Those asserted errors constitute nothing more than an erroneous application of the law in the exercise of the court's jurisdiction. An erroneous application of the law does not serve to justify a conclusion that the order of the district court is void within the meaning of Rule 60(b). The appropriate remedy for such a mistake of law is an appeal and, as we noted above, none was taken from the final order of May 5, 1988.

The order of the juvenile court is affirmed.