In the Interest of MKM, A Minor Child.

DF, Appellant (Petitioner),

v.

MLM and WS, Appellees (Respondent).

No. C–89–6.

Supreme Court of Wyoming.

May 31, 1990.

Stephen H. Kline and Kathryn A. Jenkins, Cheyenne, for appellant.

Ronald E. Triggs, Cheyenne, for appellee MLM.

Franklin Smith, Cheyenne, for appellee WS.

John Frentheway, Cheyenne, as Guardian Ad Litem.

Joseph B. Meyer, Atty. Gen., Richard E. Dixon, Asst. Atty. Gen., for Wyoming Div. of Public Assistance & Social Services.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

This case involves an extraordinarily bitter custody battle for MKM who was sexually abused by either her father or the man who became her mother's second husband. The district court adjudicated the controversy within child neglect and custody concepts and awarded custody to MKM's paternal grandmother in a best interests of the child discretional decision.

We affirm the district court's general award of present custody. However, in finding an award of permanent custody to the grandmother contrary to the statutes controlling this area of law, we modify the grant of custody to temporary legal custody and remand.

Mother, as appellant, questions whether the district court:

A. * * * lack[ed] jurisdiction to award permanent custody of [MKM] to a third party by virtue of its failure to comply with the procedural requirements of the Juvenile Court Act?

B. * * * violate[d] [mother's] fundamental rights by assuming jurisdiction under the Juvenile Court Act and awarding custody of [MKM] to a third party with no allegation, evidence or finding that [mother] neglected [MKM]?

C. * * * deprive[d] [mother] of a fundamental right by awarding permanent custody of [MKM] to a third party, in effect terminating her parental rights, without a finding that she is unfit?

D. * * * improperly award[ed] permanent custody of [MKM] to her paternal grandmother for the reasons that [grandmother] was not a party to the action and there was no evidence or finding that [mother] is unfit or neglected [MKM]?

Father, as appellee, with whom grandmother and MKM through her guardian ad litem join, questions whether the district court:

A. * * * abuse[d] its discretion in awarding custody of [MKM] to [the grandmother]?

B. * * * [had] before it substantial evidence upon which to base its decision to award custody of a minor to someone other than either of the natural parents?

C. * * * [had] proper jurisdiction over the subject matter and over the parties upon which to base its decision?

Finally, the Wyoming Division of Public Assistance & Social Services (DPASS) questions whether:

I. * * * the parties consent[ed] to a delay of more than 60 days between the filing of a petition and adjudication in juvenile court actions?

II. * * * the juvenile court [had] jurisdiction, to place custody of a child in third parties following an adjudication of neglect?

III. * * * [there is] error when a district court makes a child custody award pursuant to a divorce decree or modification thereof?

BACKGROUND

MKM's parents were married on May 20, 1983, MKM was born on August 23, 1983, and her parents divorced on December 21, 1984 in Laramie County, Wyoming. The divorce decree granted the father custody and the mother generous visitation rights.

On September 29, 1986, the district attorney's office petitioned the Juvenile Court of Laramie County [1] stating MKM was a

---

1. W.S. 14-6-202(a) (July 1986 Replacement) states:

Courts are established in each county of the state known as the "Juvenile Court of....

neglected child, pursuant to W.S. 14–6–201(a)(xvi)(B) (1977), based on an allegation of her father's sexual abuse. Meanwhile, the child was placed in a foster home. An initial appearance and arraignment was held on October 10, 1986.[2] While the father maintained his innocence, the result of this hearing was that temporary custody was awarded to the mother. The district court also ordered the mother not to cohabit with any person while the child was residing in her home.

Because custody provisions of a divorce decree remain open throughout the minority of the children involved, and the district court granting the divorce retains continuing jurisdiction to the custody aspect of the decree, *Nicholaus v. Nicholaus*, 756 P.2d 1338, 1341 (Wyo.1988), the mother petitioned the district court on April 2, 1987 to award her continuing permanent custody of the child based on changed circumstances. At the same time, she moved that her petition be consolidated with the petition filed in juvenile court.

In June 1987, MKM's guardian ad litem moved for an order to show cause why mother should not be held in contempt for cohabiting with her boyfriend in violation of the 1986 order granting her temporary custody. Mother responded with a number of motions, including one to remove the guardian ad litem. Mother and her boyfriend were married on July 24, 1987, from which a child was born in January 1988. Following a hearing held on August 6–7, 1987, the district court found the mother in contempt and denied her motion to remove the guardian ad litem.

Also at this hearing, the district court expressed concern about allowing the mother to continue temporary custody of MKM and asked counsel for suggestions on this matter. It was the result of that request that the possibility of MKM's paternal grandmother becoming custodian first surfaced. On May 17, 1988, the grandmother entered an appearance to move for the district court to grant present custody to her.

In January 1988, mother moved for relief from the 1986 order forbidding her to cohabit with any person while MKM was residing with her. She stated as her reason for relief that although she had not lived with her new husband since being found in contempt a few months earlier, they were now married and she had become pregnant. In February 1988, the district court, based on a stipulation of all parties involved, removed MKM from temporary custody of her mother and placed her in foster care. The district court allowed the mother and the father to visit their daughter under supervision, but the mother's second husband was ordered not to have any contact with the child.

While this custody battle was developing in the Wyoming juvenile and district courts, Colorado authorities instituted criminal proceedings for sexual abuse against the father. Although the record in this case does not provide an entirely clear picture of what happened in Colorado, we are able to ascertain that he was convicted of two counts of sexual assault on a minor and sentenced to two concurrent prison terms of six years. The father has steadfastly maintained his innocence, claiming his conviction came as the result of an overzealous social worker and an "unlicensed psychologist." The Colorado court denied the father's motion for a new trial and his case is presently on appeal.

The new trial motion and appeal were apparently based on the finding of new evidence which came to light after the mother lost temporary custody of her daughter. While in foster care, MKM told her foster mother, social worker and therapist that her mother's second husband was the one who sexually assaulted her and that her mother had coerced her to lie about her father's alleged improper con-

County, Wyoming." The district court judges of the state shall be the judges of the juvenile courts in the counties of their respective districts. Each juvenile court shall be a court of record with a seal and the judge, commission-

er and clerk thereof have power to administer oaths and affirmations.

2. A transcript of this hearing is not included in the record.

duct. The young child also reported that her mother had burned her with a cigarette when she would not get off of a swing fast enough. The district court was now faced with contentions of abuse by all three adults—mother, father and mother's second husband. Following a pre-hearing conference in October 1988,[3] the district court issued an order determining that MKM was a neglected child, although the specific perpetrator of any sexual assault could not be determined. Although recognizing the Colorado conviction, the district court noted the pending appeal and refused to dispositively assess guilt to the father.

A final custody disposition hearing came before the district court on August 8 and 15, 1989. Testimony came from numerous current and former social workers and therapists of MKM, MKM's foster mother, the mother, the father, the mother's second husband, the grandmother and the father's new wife who also had a child of their union. The testimony from the current social workers, the therapists and the foster mother indicated that the child may have been assaulted by her mother's second husband. The former social worker and therapist testified they believed it was the father who had abused the child. While everyone seemed reasonably certain MKM had been abused sexually, no one, except the victim or the wrongdoer, really knew who had been the perpetrator.

On August 29, 1989, the district court decided that the best placement for MKM would be with her paternal grandmother. The district court detailed its findings and conclusions and stated that "[t]he acrimony and apparent hatred between [father] and [mother], * * *, is extraordinary even by juvenile and divorce court standards." It went on to state:

> Most recently, * * *, there was persuasive and unrefuted evidence that [MKM] says that it was [her mother's second husband], not [her father], who sexually molested her; that she lied about it in court at the insistence of [her mother]; that she is tired and scared of the lying; frightened of [her mother's

second husband]; and that he is the only one who ever "bad touched her." So there now stands against [the mother's second husband], the same if not stronger, evidence of having molested [MKM] than that which convicted her father * * * of that crime. According to testimony, the District Attorney's Office in Laramie County strongly considered filing criminal charges against [the mother's second husband], but did not do so. Mention must be made of [MKM]'s relationship with her grandmother, * * *.

During much of her earliest years, and from time to time through this litigation, [MKM] has spent a great deal of time with [her grandmother]. There exists between them a very strong bond and affection. No one disputes [the grandmother]'s love for [MKM], her genuine interest in [MKM]'s welfare, or her ability to properly care for the child.

The district court manifested its awareness of the fundamental interest parents normally have in the custody of their children and that this interest may be overwhelmed only by the most compelling considerations of the child's best interests. It then listed four possibilities for placement of MKM—either of her parents, her grandmother or the Casey Family Program. Father was an unacceptable choice due to his criminal conviction, although the district court found him to be a caring and concerned father. Mother was an unacceptable choice due to her continuing relationship with her second husband who stood accused of molestation of the child. The Casey Family Program was eliminated because the district court saw it as a roadblock in front of MKM's need for familiarity and continuity in a home life. On the other hand, the district court determined the grandmother was able to offer the young child "a stable and predictable environment, that promises and delivers security, safety and love, in which she can accommodate a continuation and development of her relationship with both of her parents * * * with the minimum possible disruption."

**3.** A transcript of this hearing is also not included in the record.

## DISCUSSION

█ Mother centers her first issue around subject matter jurisdiction of the district court. Citing W.S. 14–6–224 and 14–6–226 (July 1986 Replacement),[4] she bases her contention on the district court's failure to hold an adjudicatory hearing within sixty days after the father's denial of the allegations concerning sexual abuse made in the petition at the October 10, 1986 arraignment. She argues the district court lost subject matter jurisdiction over the child as a result of that failure. We do not agree.

MKM remains subject to the jurisdiction of the court which granted the divorce between her parents. As noted earlier, the district court granting a divorce retains jurisdiction regarding custody. *Nicholaus,* 756 P.2d 1338. Mother recognized this jurisdiction through her petition to change custody, which she filed as an adjunct to the divorce proceeding while the juvenile court action was in progress. The district court, even though it was in essence the same court wearing different hats, recognized its civil jurisdiction derived from the initial divorce proceeding. Civil and juvenile jurisdiction was combined from the two parallel actions for the hearing. Although the district court demonstrated it was cognizant of this dual jurisdictional status, actual combination of the two actions was unnecessary. W.S. 14–6–203(h) (July 1986 Replacement) speaks somewhat to this situation by recognizing that a juvenile court action does not deprive the district court of its jurisdiction. In effect, the action in the juvenile court suspends, at least temporarily, the jurisdiction over the question of custody from the district court. *State of Tenn. Dept. of Human Services v. Gouvitsa,* 735 S.W.2d 452, 465 (Tenn.App.1987) (citing *Marmino v. Marmino,* 34 Tenn. App. 352, 238 S.W.2d 105 (1950)).

█ Subject matter jurisdiction is the power to hear and determine cases of the general class of which the proceeding belongs. *In Interest of WM,* 778 P.2d 1106, 1111 (Wyo.1989). It either exists or it does not, and before proceeding to a disposition on the merits, a court should be satisfied it does have the requisite jurisdiction. *Matter of Contempt Order Issued Against Anderson,* 765 P.2d 933, 936 (Wyo.1988). Subject matter jurisdiction here fits under the statutory scheme of the juvenile court act. W.S. 14–6–203(a)(i) (July 1986 Replacement).

█ Mother does not contest this principle; instead, she argues the district court lost its subject matter jurisdiction because it did not hold a hearing within the time frame suggested in W.S. 14–6–226(b) (July 1986 Replacement). As quoted above,[5] W.S. 14–6–226(b) allows the district court, following denial of the allegations of the petition of neglect, to hold either a hearing immediately or schedule one within sixty days. Both of these choices are prefaced with the verb "may" instead of "shall" as other sentences in this section are constructed. Generally, the verb "may" when used in a statute makes that statute directory instead of mandatory. *Mayor v. Board of Land Com'rs,* 64 Wyo. 409, 192 P.2d 403, *reh'g denied* 195 P.2d 752 (Wyo. 1948). While recognizing and without disturbing the public interests and rights ex-

---

4. W.S. 14–6–224 (July 1986 Replacement) states in part:

(a) Unless a jury trial is demanded, hearings under this act shall be conducted by the court without a jury in an informal but orderly manner and separate from other proceedings not included in W.S. 14–6–203. The district attorney shall present evidence in support of the petition and otherwise represent the state.

W.S. 14–6–226 (July 1986 Replacement) states in part:

(b) If the allegations of the petition are denied, the court may, with consent of the parties, proceed immediately to hear evidence on the petition or it may set a later time not to exceed sixty (60) days for an adjudicatory or a transfer hearing.

5. *See* n. 4. In a 1987 amendment, Wyo.Sess. Laws ch. 221, § 4 (1987), the permissive language found in a prior section of the juvenile code, W.S. 14–6–212(a), was changed from the permissive "may" to the mandatory "shall." Some legislative intent can be derived from analysis that the permissive term found in W.S. 14–6–226 was continued, although the section itself was otherwise amended by Wyo.Sess.Laws ch. 50 (1989). *Stratman v. Admiral Beverage Corp.,* 760 P.2d 974, 986 (Wyo.1988).

ception to the rule of construction, *Board of County Commissioners of the County of Fremont v. State ex rel. Miller*, 369 P.2d 537 (Wyo.1962), we find the verb "may" as expressed in this statute to be directory. A statute must be viewed in terms of its objective purpose. *Halliburton Co. v. McAdams, Roux and Associates, Inc.*, 773 P.2d 153 (Wyo.1989). The purpose of the entire juvenile court act is to protect the best interest of the children who come under its jurisdiction. *See* W.S. 14–6–229 (July 1986 Replacement). Statutes are not to be interpreted to produce absurd results. *State v. Sodergren*, 686 P.2d 521 (Wyo.1984). *See P.F.M. v. District Court In and For Adams County*, 184 Colo. 393, 520 P.2d 742 (1974). *See also People in Interest of A.M.*, 786 P.2d 476 (Colo.App.1989) with an amazingly similar factual situation of father and boyfriend contended assault involving a family moving from Wyoming to Colorado.

> Upon principle and authority a court or judge having jurisdiction to inquire into a question of such vital interest ought not to be hampered with a strict construction of statutes which would be the cause of much embarrassment, and often defeat the ends of justice.

*Tytler v. Tytler*, 15 Wyo. 319, 89 P. 1, 2 (1907). We cannot think of a result more absurd than to cause a vulnerable child to become unprotected while under the protective wing of our court system. Under W.S. 14–6–226(b) (July 1986 Replacement), a juvenile court may either proceed immediately or hold a hearing within sixty days, but the statutes also preserve the discretion of the court to do neither if the best interests of the child are served at least until objection to the delayed hearing is asserted by a litigant. This is what we perceive happened here. The delay was necessary in order to develop certain facets of the case needed to allow the district court to make the proper placement.

█ Mother then premises her second and third issues upon the notion that her parental rights were violated through the custody award to the grandmother. Because the right of association with one's immediate family is a fundamental liberty

right protected by the state and federal constitutions, *Hall v. Hall*, 708 P.2d 416, 421 (Wyo.1985), she claims her fundamental rights were annulled. Resolving custody necessarily involves the clash of parental rights. *Id.* However, the mother had already given up custody through the divorce decree when this case came before the juvenile court. As we can find no appeal from the divorce action, we must assume her fundamental rights were properly respected in that proceeding when her right to custody was first adjudicated.

Mother mischaracterizes this action as a termination of parental rights case. The Wyoming statutes clarify the difference between a child neglect case and a parental termination case. The effect of terminating the parent-child relationship is that it

> divests the parent and the child of all legal rights, privileges, duties and support obligations with respect to each other except the right of the child to inherent from the parent shall not be affected by the order.

W.S. 14–2–317 (July 1986 Replacement). This did not occur. Instead, the grandmother was granted legal custody of MKM who was found to be a neglected child. Legal custody is defined as

> a legal status created by court order which vests in a custodian the right to have physical custody of a minor, the right and duty to protect, train and discipline a minor, the duty to provide him with food, shelter, clothing, ordinary medical care, education and in an emergency, the right and duty to authorize surgery or other extraordinary medical care. **The rights and duties of legal custody are subordinate** to the rights and duties of the guardian of the person, and **to residual parental rights and duties**[.]

W.S. 14–6–201(a)(xiv) (July 1986 Replacement). (emphasis added). Residual parental rights and duties are defined as

> those rights and duties remaining with the parents after custody, guardianship of the person or both have been vested in another person, agency or institution.

Residual parental rights and duties include but are not limited to the duty to support and provide necessities of life, the right to consent to adoption, the right to reasonable visitation unless restricted or prohibited by court order and the right to determine the minor's religious affiliation[.]

W.S. 14–6–201(a)(xxi) (July 1986 Replacement). The juvenile court made no specific finding restricting visitation, which would have been within its jurisdiction to make. *In Interest of K.B.*, 188 Ga.App. 199, 372 S.E.2d 476 (1988). Any other infringement of the mother's parental rights would have to be adjudicated through a termination of parental rights proceeding. W.S. 14–2–308 through 14–2–319 (July 1986 Replacement). At present, her rights as a parent remain intact in residual character, subject to temporary custody in the grandmother, as a result of exercised judicial decision to achieve the status serving the best interest of the child which has constitutional preeminence. *In Interest of J.L.*, 761 P.2d 985 (Wyo.1988); *TR v. Washakie County Dept. of Public Assistance and Social Services*, 736 P.2d 712 (Wyo.1987). *See Fanning v. Fanning*, 717 P.2d 346 (Wyo.1986).

In support of her parental priority argument, mother directs us to the case of *Douglas v. Sheffner*, 79 Wyo. 172, 331 P.2d 840 (1958). She cites this case for the proposition that she should not be deprived of custody of her child unless it is clearly shown that she is so unfit a person as to endanger the child's welfare. *Id.* 331 P.2d at 845. The proposition therein was based upon what has variously been called "the tender-years presumption" or "the maternal preference." While gender-based awards of custody might have been the law in 1958, they are not now. The legislature has eliminated such bias. W.S. 20–2–113(a) (1986 Cum.Supp.). *See Fanning*, 717 P.2d 346. Since W.S. 20–2–113(a) speaks to an entire subject of gender-based custody determinations, the legislature abrogated any contrary decisions of this court. *L.U. Sheep Co. v. Bd. of County Com'rs of the County of Hot Springs, Wyoming*, 790 P.2d 663 (Wyo.1990); *Matter of Voss' Adoption*, 550 P.2d 481, 486 (Wyo.1976);

*Snell v. Ruppert*, 541 P.2d 1042, 1046 (Wyo.1975).

Mother's final issue requires us to consider the propriety of awarding custody of the child to the paternal grandmother. As found by the district court, there is no dispute about the neglected child status. W.S. 14–6–229 (July 1986 Replacement) controls the disposition of a case where a child is adjudged to be neglected. It states in part:

(a) When a child is adjudged by the court to be neglected, * * *, the court shall enter its decree to that effect and make a disposition as provided in this section that places the child in the least restrictive environment consistent with what is best suited to the protection of the public safety and interest, the physical, mental and moral welfare of the child and in accord with the actual facilities presently available when the decree is entered.

(b) If the child is found to be neglected the court may:

\* \* \* \* \* \*

(iii) Transfer temporary legal custody to a relative or other suitable adult the court finds qualified to receive and care for the child, with or without supervision, subject to terms and conditions prescribed by the court[.]

Mother argues that the grandmother should be denied custody because she was not a "party" to this proceeding. She claims W.S. 14–6–201(a)(xviii) (July 1986 Replacement) excludes a grandparent as a party. However, that statute states "'[p]arties' *include* the child, his parents, guardian or custodian, the state of Wyoming and any other person made a party by an order to appear." (Emphasis added.) *Cf. In Interest of WM*, 778 P.2d 1106. This list of parties is illustrative and not exhaustive. *Cf. Town of Pine Bluffs v. State Bd. of Equalization*, 79 Wyo. 262, 333 P.2d 700, 708 (1958).

■ Reading W.S. 14–6–201(a)(xviii) (July 1986 Replacement) in pari materia, e.g., *Haddenham v. City of Laramie*, 648 P.2d 551 (Wyo.1982), with W.S. 14–6–229

(July 1986 Replacement), we hold that an interested relative of a neglected child may become a party in such an action through a motion as made by the grandmother here. *In Interest of WM*, 778 P.2d 1106 addresses this aspect of custody by a relative.

However, we do find one error with the disposition of this case. The order granting custody of MKM to the grandmother granted "permanent" custody. Since the statute allows only "temporary legal custody" to a relative, W.S. 14–6–229(b)(iii) (July 1986 Replacement), this must be corrected. It is within the power of this court to modify the judgment. *Slane v. Curtis*, 41 Wyo. 402, 288 P. 12 (1930). We do so and remand the matter to the juvenile court to issue an order reflecting this modification. W.S. 14–6–231(b) and (c) (July 1986 Replacement) explain that an order of temporary custody remains in effect until terminated by the court upon a finding that its purpose has been achieved and the child's best interests have been served, or when the child reaches the age of eighteen or graduates from high school. Thus, the juvenile court will have continuing supervision over MKM until one of these three conditions have been achieved. For this child, the time has come to provide some stability. The order of the district court directed to achieve that goal is approved. *In Interest of WM*, 778 P.2d 1106; *Matter of TR*, 777 P.2d 1106 (Wyo. 1989), Urbigkit, J., concurring in the result.

The decision of the district court is affirmed with modification.

MACY, Justice, specially concurring.

I concur in the result reached in this case; however, I want to briefly address an issue which the majority hurried past in its resolution of the case. I question whether a mother's parental rights are subject to disposition by the juvenile court when the petition contains no allegation charging her with neglect. When neglect is alleged against either or both of the parents, Wyo. Stat. § 14–6–226(a) through (c) (1977) contemplates a three-stage process: (1) Each parent is advised of the specific allegations set forth in the petition and given an oppor-

tunity to either admit or deny them; (2) if the allegations contained in the petition are denied, the court shall conduct an adjudicatory hearing to determine the truth of the allegations in the petition; and (3) after an adjudicatory hearing, the court shall either dismiss the petition (because the allegations have not been established) or enter its decree stating the jurisdictional facts upon which its finding of neglect is based.

Focusing on the present case, it seems to me that the above process has been compromised when an allegation that the father has "neglected" MKM is used to affect the mother's parental rights. A parent's rights, vis-a-vis the child, are not subject to the juvenile court's disposition, Wyo. Stat. § 14–6–229(a) (1977), absent an allegation and finding that the parent has committed an act of neglect. In this instance, the only allegation of neglect contained in the petition was directed at MKM's father. The mother was not put on notice that her conduct constituted neglect, and her opportunity under § 14–6–226(a) to deny the allegation was curtailed.

Because, as pointed out in the majority opinion, the mother participated in subsequent proceedings and was able to assert her parental rights, notwithstanding the absence of an allegation of neglect directed at her, I agree with the result reached by the majority.