**In the Interest of CH, a minor. PP, Appellant (Respondent),**

v.

**CAMPBELL COUNTY D–PASS, Appellee (Petitioner).**

**No. C–84–2.**

Supreme Court of Wyoming.

May 17, 1985.

Dwight F. Hurich of Preuit, Sowada & Hurich, Gillette, for appellant (respondent).

A.G. McClintock, Atty. Gen., and Laura L. Beard, Asst. Atty. Gen., Cheyenne, for appellee (petitioner).

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

A petition was filed in the juvenile court of Campbell County alleging that CH, a 16-year-old female minor, had been neglected. PP, the mother of CH, appeals from the order of the court relative to the disposition of CH and from the court's refusal to grant PP's motion to dismiss the petition on the ground that § 14–6–201(a)(xvi)(B), W.S.1977, 1984 Cum.Supp., is unconstitutionally vague.

We affirm.

In accordance with the directions of the revised and amended Juvenile Court Act, § 14–6–201 et seq., W.S.1977, the procedure followed in this case was: The petition was filed June 13, 1984, by the county attorney's office after CH complained to the Campbell County Department of Public Assistance and Social Services (D–PASS) that one RW, a 63-year-old male, had forced sexual relations with her on June 9, 1984. RW was not married to PP but was living with her. He was not related to CH. On June 13, 1984, a "shelter care" hearing was held by the court commissioner and temporary foster care placement of CH with D–PASS was approved. A guardian ad litem was appointed for CH. The district court judge reviewed the temporary custody arrangement at a hearing on June 19, 1984, and he ordered continuation of the arrangement, directing that there be no contact between CH and RW. On July 5, 1984, an adjudicatory hearing was held. PP moved to dismiss the petition on the grounds that the statute defining neglect was unconstitutional in that it was so vague and ambiguous that PP could not admit or deny the allegations of the petition. The court denied the motion and continued the temporary disposition. On August 30, 1984, D–PASS filed a predisposition report with the court pursuant to § 14–6–227, W.S.1977, 1984 Cum.Supp. By order dated September 6, 1984, the court continued care and custody of CH with D–PASS but allowed placement of her with PP. On October 2, 1984, CH requested the district court to order replacement of her because "her personal relationship with her mother has deteriorated to the point that it would be in the best interest of" CH to do so. The court granted the motion on October 15, 1984.

The only issue presented on appeal is whether or not the words "allowing the commission of a sexual offense against a child as defined by law" in § 14–6–

201(a)(xvi)(B) is unconstitutionally vague in defining a child who has been abused and, therefore, neglected. Following are the pertinent provisions of the revised and amended Juvenile Court Act, § 14–6–201 et seq., including the foregoing words in context: [1]

"§ 14–6–201. *Definitions.*

"(a) As used in this act [§§ 14–6–201 through 14–6–243]:

\*  \*  \*  \*  \*  \*

"(xvi) 'Neglected child' means a child:

"(A) Whose custodian has failed or refused to provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well being. \* \* \*

"(B) *Who has been abused by the inflicting or causing of physical or mental injury, harm or imminent danger to the physical or mental health or welfare of the child,* other than by accidental means, *including* abandonment, excessive or unreasonable corporal punishment, malnutrition or substantial risk thereof by reason of intentional or unintentional neglect, and *the commission or allowing the commission of a sexual offense against a child* as defined by law:

\*  \*  \*  \*  \*  \*

"(III) 'Substantial risk' means a strong possibility as contrasted with a remote or insignificant possibility;

"(IV) *'Imminent danger' includes threatened harm and means a statement, overt act, condition or status which represents an immediate and substantial risk of sexual abuse or physical or mental injury."* (Emphasis added.)

"§ 14–6–225. *Burden of proof required* \* \* \*.

---

1. *Haddenham v. City of Laramie,* Wyo., 648 P.2d 551, 553 (1982), provides:

"All portions of the act must be read in pari materia, and every word, clause and sentence

of it must be given effect, [citations], all with the purpose of ascertaining and giving effect to the legislative intent, [citations]."

"(a) * * * Allegations of conduct showing a child to be neglected *must be proved by a preponderance of the evidence.*" (Emphasis added.)

"§ 14–6–229. *Decree where child adjudged neglected, delinquent or in need of supervision * * *.*

"(a) When a child is adjudged by the court to be neglected, delinquent or in need of supervision, the court shall enter its decree to that effect and make a disposition as provided in this section that places the child in the least restrictive environment consistent with what is best suited to the protection of the public safety and interest, *the physical, mental and moral welfare of the child* and in accord with the actual facilities presently available when the decree is entered.

"(b) If the child is found to be neglected the court may:

\* \* \* \* \* \*

"(v) Transfer temporary legal custody to a state or local public agency responsible for the care and placement of neglected children * * *." (Emphasis added.)

The record reflects the following facts of this matter in addition to those related supra: CH said that her mother would live with RW for a while and then would live with another man but would always again live with RW; that RW began molesting her when she was approximately ten years old; that he had sexual intercourse with her on a regular basis since she was 11 years old; and that the last time was on June 9, 1984, when he came to her bedroom and "overpowered her" when she "tried to fight him away." CH testified:

"Q  Did you ever tell your mother?

"A  No.  I dropped hints at her, but I never told her."

PP testified:

"Q  * * * [D]id you ever suspect in the course of that last few years there may be some sort of sexual abuse or sexual activity going on between your daughter and * * * [RW]?

"A  Yes, I had suspected something.

"Q  Did you inquire * * * from your daughter—if something was going on?

"A  Yes, I did.

"Q  Frequently or infrequently?

"A  Quite frequently.

"Q  Did you inquire from * * * [RW] if something was going on?

"A  Yes, I did.

\* \* \* \* \* \*

"Q  Did you in any way allow * * * [RW] to get—be involved in this—some sort of sexual offense against your child?

"A  No."

On August 9, 1982, about two years prior to the petition in this matter, PP advised D–PASS that she had caught CH and RW in bed together at least 12 times over the past year although both of them denied to her that there was any sexual contact. Before D–PASS could investigate the complaint, PP left the area with a new boyfriend, taking CH with her.

In *Sorenson v. State,* Wyo., 604 P.2d 1031 (1979), we reviewed at length the standard under which we determined whether or not a statute was unconstitutionally vague. It is unnecessary to repeat all of that there said. In summary, we concluded that, except for vagueness challenges involving First Amendment freedoms, we examine the questioned statute for such purpose in the light of the facts of the case at hand

" * * * to determine if it sets forth the acts or conduct required or forbidden with reasonable certainty and in a fashion whereby a person of ordinary intelligence is given fair notice that his contemplated conduct is forbidden.  * * * " 604 P.2d at 1034.

PP's motion to dismiss and her argument to this court is premised on the contention that she did not know whether or not the series of sexual intercourses took place between CH and RW and that, therefore, she should not be deprived of custody and care of CH under a statute which she claims does not convey a warning as to her proscribed conduct under the factual situation. She contends that the statutory language

"commission or allowing the commission of a sexual offense" implies an intentional act on her part to promote or further the sexual abuse.

■ Subparagraph (A) of § 14-6-201(a)(xvi) concerns action or lack of action by a child's custodian as determinative of neglect. It includes a failure to provide adequate supervision or any other care necessary for the child's well-being as neglect. But the petition does not allege violation of subparagraph (A). Subparagraph (B) thereof, the subparagraph under which neglect was alleged in the petition, does not require the action or inaction to be on the part of the custodian. But since such action or inaction can result in a deprivation of care and custody of the minor from the custodian, it implies that a custodian of ordinary intelligence could have, and would have, done that within his means to alleviate that which he knew or should have known constituted the neglect.

■ The statute gave notice to one of ordinary intelligence that a female child between the ages of 11 and 16 is considered neglected when she must live with her mother, who in turn is living with a man to whom she is not married, whom the mother finds in bed with the child at least 12 times over the period of a year, and who is suspected by the mother of having sexual activity with, or sexually abusing, the daughter, the occurrence of which the daughter "dropped hints" was happening. The notice that such constitutes neglect is given by statutory language which provides that a child's placement should be that best suited to "the physical, mental and moral welfare of the child" and that neglect occurs when a child is abused by causing "imminent danger" to her or her "physical or mental health or welfare" including "allowing the commission of a sexual offense against a child" ("imminent danger" being defined as including an "overt act, condition or status which represents an immediate and substantial risk of sexual abuse," and with "substantial risk" being defined as a "strong possibility").

Certainly a reasonably intelligent person would know that the facts of this case would place CH in the status of a neglected child as set forth in the Act. That forbidden is set forth with reasonable certainty in the Act as it pertains to the facts of this case. The facts of this case do not support a challenge of the Act on the basis of unconstitutional vagueness.

Finally, appellant contends that the strict scrutiny test must be applied in determining whether the statute is unconstitutionally vague inasmuch as the interference directed by the statute is with appellant's fundamental right to have care and custody of her own child, citing *Moore v. City of East Cleveland,* Ohio, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); and *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), among others.

The standard of strict scrutiny does not help appellant under the circumstances of this case. *In State in Interest of C,* Wyo., 638 P.2d 165, 173 (1981), we said:

" * * * 'Strict scrutiny' is the standard applied when it becomes necessary to balance a fundamental right against a compelling state interest. It requires the establishment of the compelling state interest and the showing that the method of achieving such is the least intrusive of those methods by which such can be accomplished. [Citations.]"

■ The compelling State interest here is the physical, mental and moral welfare of the child as stated in the Act. The fundamental right of PP to have custody and care of the child must be weighed against the compelling State interest in not having the child in a home occupied by a man with whom the mother is living without marriage, which man has continually abused the child through regular sexual intercourse over several years. Additionally, the weighing process must also include on the side of the compelling State interest the fact that PP has lived with one man without marriage for a while and then another without marriage before returning to the first one, with this occurring on more than one occasion; PP has found the child

in bed with one of these men on at least 12 occasions in one year; the child has given PP hints of sexual activity between the man and the child; and PP has suspected sexual activity between the man and the child. The proof of neglect was supported by clear and convincing evidence. *Santosky v. Kramer*, supra. The State's effort to accomplish its compelling interest was the least intrusive. Although care and custody were taken from PP, the child was allowed to live with PP, albeit with direction that there be no contact between the child and the man, until the child, at the age of 16, requested placement elsewhere because the "personal relationship with her mother has deteriorated to the point that it would be in the best interest" of the child. Additionally, the court ordered reevaluation of the matter in six months.

The Act is not unconstitutionally vague under the facts of this case regardless of the standard under which such is evaluated.

Affirmed.