**In the Interest of AB, a Minor.**

**PMB, Appellant (Respondent),**

v.

**STATE of Wyoming, GOSHEN COUNTY DEPARTMENT of SOCIAL SERVICES, Appellee (Petitioner).**

No. C–91–1.

Supreme Court of Wyoming.

Oct. 14, 1992.

Jerry M. Smith, Ann T. Schnelzer, Sigler & Smith Law Offices, Torrington, for appellant.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Deputy Atty. Gen., and Richard E. Dixon, Sr. Asst. Atty. Gen., for appellee.

Keith G. Kautz, Sawyer, Warren & Kautz, Torrington, guardian ad litem for AB.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

THOMAS, Justice.

The primary issue presented in this appeal is whether an order by a district court commissioner, made following a shelter care hearing conducted after the filing of a petition in juvenile court alleging neglect of a child, was a final disposition of the issues and entitled to recognition under the doctrine of *res judicata*. The proceeding was instituted and conducted in juvenile court

* Chief Justice at time of conference

pursuant to the provisions of Wyo.Stat. §§ 14–6–201 to –243 (1986). In addition, collateral issues are raised with respect to the failure to appoint counsel to represent the mother and a guardian *ad litem* after the filing of a second petition in the proceeding; a search warrant issued in connection with the matter subsequent to the order by the court commissioner; the denial of a motion for continuance by the mother; and the sufficiency of the evidence to sustain the finding of neglect by the court. The trial court ruled that the proceedings were not controlled by the doctrine of *res judicata;* it was unnecessary to have additional appointments of counsel and the guardian *ad litem;* the continuance sought should be denied; and the evidence established neglect.

We hold the order entered by the court commissioner, even if it were properly before us, would not be a final order invoking the concepts of *res judicata* or collateral estoppel. We further hold no error occurred in the proceeding because of the failure to make a second appointment of counsel and a guardian *ad litem;* by virtue of the search warrant, since no evidence obtained was used at the hearing; no abuse of discretion is found in denying the motion for continuance; and the evidence starkly justifies the decision of the juvenile court. The order of the juvenile court is affirmed.

In the brief of the mother, as appellant in this case, the issues are stated in this way:

I. The Court Order entered on April 17, 1990, in Case No. PJ2–155 operates as a bar to the use of all evidence and testimony of alleged child neglect that occurred prior to April 17, 1990, in subsequent cases.

II. The document entitled Petition II is invalid for the reason that it does not conform to W.S. 14–6–212 and it is based on *res judicata* evidence and issues.

III. The document entitled Petition II is invalid for the reason that it should have been filed to open a new case and not a continuation of Case No. PJ2–155, a fully adjudicated case.

IV. The Court's Order of January 8, 1991, is invalid for the reason that Petition II requires the appointment of an Attorney and Guardian *Ad Litem* for the minor child and the appointment of an Attorney for the mother, and no written orders were entered appointing such attorneys and/or guardian *ad litem.*

V. The Mother's motion to suppress evidence obtained prior to April 17, 1990, should have been granted, and the state should have been estopped from introducing such evidence on the basis of *res judicata.*

VI. The Search Warrant dated January 2, 1991, was defective for the reason it was supported by *res judicata* facts and events and no application was filed for the search warrant as required by W.S. 14–6–218.

VII. The Mother's Motion for Continuance was improperly denied.

VIII. The evidence does not sustain the Court's finding that the minor child, A.B., was neglected as defined by W.S. 14–6–201(a)(xvi).

In the Brief of Appellee, the State of Wyoming, this statement of the issues is offered:

I. May *res judicata* or collateral estoppel bar further proceedings in the absence of proof that a prior judgment exists?

II. Given her fundamental right to care for and associate with her daughter, was appellant afforded adequate notice and a meaningful opportunity to be heard?

III. Was the neglect of AB by appellant demonstrated by a preponderance of evidence in the court below?

IV. May this court move to effect the most expeditious reunification of appellant and her daughter consistent with AB's health and safety?

A Brief of Guardian *Ad Litem*/Minor Child also was filed in which this statement of the issues is articulated:

I. Did the shelter care decision of April 17, 1990, bar further proceedings based on evidence which existed on that date?

II. Were procedures regarding notice and counsel properly followed, and was appellant afforded procedural due process?

A. Was a new docket number required?

B. Were appropriate counsel appointed?

C. Did appellant receive proper notice of the allegations?

D. Was evidence improperly obtained?

E. Should a continuance have been granted to appellant?

III. Was neglect of the minor demonstrated by a preponderance of the evidence?

The essential facts can be briefly stated. In September of 1989, the Goshen County Division of Public Assistance and Social Services (DPASS) first contacted the mother, PB, and her infant daughter, AB. A voluntary case plan meeting was held the following month involving DPASS and the mother, and the product of that meeting was the assignment of a homemaker to assist the mother in improving the home environment and to monitor the feeding of the baby. As a product of that contact, DPASS reported a house cluttered with clothing and junk. It found bags of pet food in the hallway and dirty dishes in the kitchen. The corrective action consisted of a list of chores, including vacuuming three times a week; sweeping the kitchen floor five times a week; scrubbing the kitchen floor three times a week; washing the daily dishes; taking out the garbage daily; and scrubbing the bathroom once a week. During the course of this rehabilitative effort, the baby was fed and bathed regularly by the homemaker, who also assisted in cleaning the baby's bedroom and her bed linen.

By April of 1990, DPASS was not satisfied with the progress that PB was making in the care of her home and child. The baby was taken into protective custody on April 13, upon the recommendation of DPASS. On that occasion, photographs and a videotape were taken of the interior and exterior of the residence. A descrip-

tion of the conditions observed at that time with respect to the home was:

Dirty, to the point that it made me wonder how somebody could live in such a residence. Dirty dishes, dog feces on the floor, dirty linen, rotting food in containers out in the open within reach of small children. If I had to say one word about it, I would say it was horrible.

As indicated, the shelter care hearing provided for in § 14–6–209 was conducted by a district court commissioner. The record does not encompass an order of the district court commissioner, but there seems to be no serious dispute that the commissioner authorized shelter care for the child for only fifteen days or until the mother had cleaned up the house. It appears that was accomplished in several days, and the child then was returned to the home environment. The improvement in the living conditions was of rather short duration, and then the previous conditions again became manifest. The mother no longer had animals in the house, but she failed to properly clean the house, remove garbage, or feed the child. By late 1990, the living conditions for the child had become worse than before. In the meantime, the by then Department of Family Services (DFS) had provided over 250 hours of homemaker assistance, but the mother simply would not maintain a clean and safe environment for the child.

During this time, the DFS became concerned about the physical development of the child and requested an evaluation from several expert sources. Those evaluations resulted in conclusions that there was cause for concern over the child's physical development or failure to thrive. At that juncture, a second petition was filed in the case that realleged neglect, and this neglect was still predicated upon unsanitary and unsafe living conditions. There was an additional allegation of failure to provide adequate nutrition.

After consultation with the previously appointed counsel for the mother, a hearing date of January 4, 1991 was established. At the conclusion of a day-long hearing, the trial court found the child to be neglected

and ordered her returned to the custody of the State for foster placement until further order of the court. This appeal is prosecuted from that decree.

■ We will not pause long with respect to the set of issues asserted by the mother relating to the finality of the order of the commissioner and the effects of *res judicata* or collateral estoppel that flow from such an order. That contention is answered definitively in § 14–6–210. The pertinent statutory provisions are:

(a) In the absence or incapacity of the judge, the detention or shelter care hearing shall be conducted by a district court commissioner of the county in which the child is being detained or held in shelter care.

(b) The commissioner may make any order concerning the child's release, continued detention or shelter care as authorized to the judge under W.S. 14–6–209. If the child is not released after the hearing, the commissioner shall promptly file with the court a complete written resume of the evidence adduced at the hearing and his reasons for not releasing the child. The commissioner may also issue subpoenas or search warrants, order physical or medical examinations and authorize emergency medical, surgical or dental treatment all as provided in W.S. 14–6–217 through 14–6–220. **The commissioner shall not make final orders of adjudication or disposition.**

Wyo.Stat. § 14–6–210 (1986) (emphasis added).

The record does not disclose compliance with § 14–6–210(b), but that may be of no significant moment since the child was returned to the mother about three days after the shelter care hearing. It is clear from the statute that the action of the commissioner is simply an interlocutory phase of the proceeding.

Absent any further action by one of the parties, the matter simply remained pending on the docket of the juvenile court. The second petition filed in the proceeding did not institute another juvenile case. Despite a prayer in the second petition for the appointment of an attorney for the mother

and a guardian *ad litem* for the child, the second petition did not require the appointment of a different attorney or guardian *ad litem*. It is clear that the juvenile court ruled that the existing appointments remained in effect. There was no error in this regard.

With respect to the contention that a search warrant was unlawfully issued, we do not address that issue in this case. The record demonstrates plainly that nothing was introduced at the hearing which was the product of the search warrant, the issuance of which is claimed to be unlawful. Consequently, insofar as these proceedings are concerned, no injury could have occurred with respect to the rights of the mother, and we decline to consider the matter as an academic issue.

▮ Our evaluation of the record persuades us there was no abuse of discretion in the failure of the trial court to grant a continuance. We have held a number of times that granting a continuance is a matter of discretion with the trial court, and its ruling will not be disturbed on appeal in the absence of a clear abuse of that discretion. *E.g., Carlson v. BMW Industrial Service, Inc.,* 744 P.2d 1383 (Wyo.1987); *Tomash v. Evans,* 704 P.2d 1296 (Wyo.1985); *Craver v. Craver,* 601 P.2d 999 (Wyo.1979). Considering the fact that the date of the hearing was arranged with counsel in this instance, and there was no significant adjustment to the issues presented by the testimony of a physician who examined the child the day before, we perceive no abuse of discretion on the part of the trial judge. Counsel for the mother skillfully and appropriately cross-examined the physician. In addition, there was counter evidence presented on the mother's behalf.

▮ The final issue, and perhaps the only one that has moment in this proceeding, is that of the sufficiency of the evidence to sustain the order of the district court. We unequivocally agree that the evidence was sufficient, distasteful as it was.

Obviously, the proceedings pursuant to the child protection statutes are a step in what ultimately may be the termination of parental rights. Consequently, cases arising in the context of the determination of parental neglect are relevant in resolving this case, although it must be recognized that when termination of parental rights is involved, the evidence is to be strictly scrutinized. That standard does not pertain in connection with the transfer of temporary legal custody pursuant to the child protection statutes. Wyo.Stat. § 14–6–225(a) (1986). In *TR v. Washakie County Department of Public Assistance and Social Services,* 736 P.2d 712 (Wyo.1987), this court found the evidence sufficient to establish neglect in the context of terminating parental rights. In that case, we accounted for an earlier case in which we held that evidence of isolated instances of unclean premises, dirty dishes, and related matters, is not sufficient grounds for termination. *DS v. Department of Public Assistance and Social Services,* 607 P.2d 911, 922 (Wyo.1980). We perceive that the standards articulated in *DS* and the requirements found in *TR* were established by a preponderance of the evidence. In light of our earlier cases, we are satisfied that the quantum of evidence present here was sufficient to sustain the burden of proof of the DFS to justify the decree entered by the court. *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), *on remand,* 89 A.D.2d 738, 453 N.Y.S.2d 942 (3 Dept.1982); 2 Am. Jur.2d Proof of Facts 365 §§ 32–34 (1974).

One final matter merits attention. While not argued by the parties in their appeal, through correspondence, the issue of payment for a transcript for purposes of the record on appeal was injected into this matter. In our view, that issue is resolved by Wyo.Stat. § 14–6–235(b) (1986) which provides, in pertinent part:

> The following costs and expenses, when approved and certified by the court to the county treasurer, shall be a charge upon the funds of the county where the proceedings are held and shall be paid by the board of county commissioners of that county:

> \*    \*    \*    \*    \*    \*

(vii) Any other costs of the proceedings which would be assessable as costs in the district court.

In our view, the costs of the transcript would be assessable as costs in the district court and are sufficiently like the other items enumerated in § 14-6-235 that the county should be required to pay the costs of the transcript.

Also, a motion has been filed for temporary remand to set attorney fees for counsel for the mother. That matter may be dealt with adequately by the juvenile court upon the mandate in this case. No order addressing that motion will be entered.

The decree of the juvenile court is affirmed.