**In the Interest of MFB, a Minor.**

**DB, Appellant (Respondent),**

v.

**The STATE of Wyoming, DEPARTMENT OF FAMILY SERVICES, Appellee (Petitioner).**

**No. C–93–1.**

Supreme Court of Wyoming.

Oct. 4, 1993.

H. Steven Brown and James A. Raymond, Brown & Raymond, P.C., Casper, for appellant.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., and Richard E. Dixon, Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

TAYLOR, Justice.

In this appeal of a juvenile court neglect proceeding, the father of a minor child challenges the juvenile court's jurisdiction to conduct proceedings after failing to hold an adjudicatory hearing within the time period stated in Wyo.Stat. §§ 14–6–209(c) and 14–6–226(b) (1986 & Cum.Supp.1993). The father also contends the juvenile court erred during the adjudicatory hearing by permitting presentation of improper evidence and by failing to make necessary findings of fact. The juvenile court determined, in the best interests of the child, that custody should be granted to the Department of Family Services.

We hold that the juvenile court maintained proper subject matter jurisdiction because the failure to set an adjudicatory hearing within the time suggested by the applicable statutes does not result in a loss of jurisdiction. We affirm that admissible evidence supported the determination made by the juvenile court that the child was

neglected. We also affirm that the grant of custody included a sufficient finding of neglect; however, in accord with statutory requirements, we modify the custody determination to specify that custody is temporary.

## I. ISSUES

Appellant, the father, presents the following issues on appeal:

### I.

Was the district court in error for refusing to grant a parent's motion to dismiss for lack of jurisdiction when the petition for juvenile abuse/neglect was not adjudicated within sixty (60) days as required by Wyoming Statutes § 14–6–226 and 14–6–209?

### II.

Was the district court in error in allowing into evidence at an adjudicatory hearing, under Wyoming Statute § 14–6–226 evidence that occurred *after* the state's taking of the child?

### III.

Was the district court in error in allowing a taking of the child when its final order and findings failed to show abuse or neglect by the parent before the state's taking of the child?

(Emphasis in original.)

On behalf of appellee, the Wyoming Department of Family Services, the Attorney General chose to frame a single, different issue:

Did the lower court fulfill the mandate of this court as expressed in the Order Denying Motion To Reconsider Peremptory Writ of Mandamus and Staying Dismissal for Twenty Days To Permit A Hearing To Be Held Within That Time?

The guardian ad litem did not file a brief in this appeal on behalf of the minor child.

## II. FACTS

Within a month after the sudden, unexplained disappearance of her mother, police took MFB, then age two and one-half, into protective custody and removed her from the home she shared with the father and his girlfriend. A petition alleging neglect of a minor child was filed by the State on January 2, 1991. In a supporting affidavit, filed with the petition, a local police investigator detailed various concerns of family members and authorities for the welfare of MFB, including the father's failure to permit professional counseling for MFB to help her deal with the disappearance of her mother. The affidavit included information that MFB's welfare was threatened because she had some knowledge of possible criminal activity involved in her mother's disappearance.

Following the appointment of a guardian ad litem for MFB, a shelter care hearing was conducted on January 3, 1991 by a court commissioner. The father waived his right to an attorney and informed the juvenile court that he was leaving the county for an eighteen week military training school in another state. He stipulated to a custody arrangement. The Department of Family Services assumed temporary legal custody of MFB with temporary placement at MFB's maternal grandparents. The commissioner ordered psychological evaluations of MFB and the father.

The father presented himself for psychological evaluation on January 4, 1991. The evaluation was scheduled to include a personal interview and some standardized testing. However, when the psychologist left the room, the father failed to complete most of the tests and departed. As a result, the psychologist reported to the juvenile court that no diagnosis was possible from this evaluation.

Meanwhile, counseling had begun for MFB. MFB experienced high levels of anxiety and recurring memories of a traumatic incident related to her mother's disappearance. The counselor concluded that MFB suffered from Post Traumatic Stress Disorder.

When the father returned from his military training, he filed an Affidavit In Forma Pauperis requesting court-appointed representation. An attorney was appointed on May 20, 1991.

The father requested a "Review Hearing" for October 16, 1991 to consider a change in visitation. A report from MFB's counselor revealed that of five scheduled supervised visits, the father had appeared for only four visits. His interaction with MFB at the visits was characterized as displaying a lack of sensitivity. As an example, the counselor pointed out that during the second visit, the father brought a picture of MFB's mother and displayed it without seeking guidance in how to help MFB deal with her mother's disappearance. At another session, the counselor reported that the father brought inappropriate reading material to show MFB, a book titled *The Principles of Anatomy and Physiology.* The counselor told the court that MFB showed regression in her behavior, including nightmares, loss of appetite and tantrums, following each supervised visit. The counselor reported that MFB feared for her safety, telling the counselor, "My Daddy said he would kill me." The juvenile court permitted supervised visitation to continue, but ordered a second psychological evaluation of the father and that he be required to successfully complete parenting classes as part of a reunification plan. The father presented himself for the second psychological evaluation on November 25, 1991.

On January 22, 1992, the father apparently requested an "Adjudicatory Hearing." The form used as the Request For Setting misidentified the father's attorney as the "Attorney/Guardian ad Litem for Minor." However, the juvenile court evidently presumed the attorney was acting on behalf of the father. The hearing was promptly set for February 10, 1992. However, no hearing was held on that date because only thirty minutes had been reserved. In a later hearing, the father's attorney admitted rescheduling was necessary because he had not requested sufficient time for the proceeding. On March 3, 1992, the State requested a one-day "Contested Hearing" which was set for May 11, 1992. All parties agreed that this was an adjudicatory hearing.

During the adjudicatory hearing, the State presented testimony from MFB's counselor that she suffered from Post Traumatic Stress Disorder which was severe in nature. The counselor described the traumatic event which triggered the disorder as occurring at the time that MFB's mother disappeared. In the counselor's opinion, the father's failure to seek professional help for such a young child suffering the stress of such a traumatic event constituted serious neglect.

The paternal grandparents testified that they saw the father strike MFB with a hard slap across the face when she did not want to leave her grandparents following her mother's disappearance. As a result, the paternal grandfather said he feared for MFB's safety if she remained in the father's home. The paternal grandmother testified that the father used obscene language and made inappropriate references to the disappearance of the mother while MFB was present.

The maternal grandmother testified about behavioral problems MFB experienced following her mother's disappearance, including claiming her mother was dead. The maternal grandmother testified she expressed her concern for MFB's well-being to local police following a visit in which the child acted withdrawn and had trouble sleeping.

The adjudicatory hearing was not completed in one day as originally scheduled. The juvenile court recessed before completion of the State's case. During the interim period, the juvenile court ordered another evaluation of MFB, this time by a child psychiatrist.

When the adjudicatory hearing resumed on July 30, 1992, a board certified child psychiatrist testified that she diagnosed MFB as suffering from Post Traumatic Stress Disorder. The disorder was caused by the emotional abuse or trauma which the child suffered as a result of MFB's

belief that she saw the father hurt her mother. The psychiatrist indicated that MFB would suffer tremendous anxiety if she were returned to the father's custody because MFB feared the father would harm her.

The psychologist who conducted both evaluations of the father diagnosed him as suffering from an adjustment disorder. The father also displayed some long term characterological features such as passive aggressive behavior and a narcissistic personality. Testing revealed he suffered from depression and significant amounts of anger. The psychologist recommended further counseling for the father and demonstrated success before any attempt to increase visitation or reunify the family.

The father admitted in his testimony that following his wife's disappearance, he had reacted to the suspicions of his family with some unusual behavior. However, he denied that behavior ever included slapping MFB in the face. The father said he completed the juvenile court-ordered parenting classes and psychological evaluations as part of his commitment to do whatever was necessary to get MFB back.

The juvenile court found, in denying a motion to dismiss after completion of the State's presentation of evidence, that there had been physical abuse and neglect. Furthermore, at the conclusion of all evidence, the juvenile court found that MFB suffered from Post Traumatic Stress Disorder caused by the disappearance of her mother and the fear that the father would harm her. In an integrated disposition proceeding, the juvenile court ordered that in the best interests of the child, legal custody would remain with the Department of Family Services and MFB would be placed with the maternal grandparents. The juvenile court permitted supervised visitations bimonthly for three hours per visit and ordered the father to attend counseling.

### III. DISCUSSION

#### A. *Subject Matter Jurisdiction*

The central argument presented by the father is that the juvenile court lacked jur-

isdiction to proceed with this case. At the May 11, 1992 hearing, the father made a motion to dismiss based upon the failure of the juvenile court to hold the adjudicatory hearing within sixty days of the time the father denied the allegations of neglect and abuse contained in the petition. *See* Wyo. Stat. §§ 14–6–209(c) and 14–6–226(b). The father declared that the allegations should be deemed denied at the time of the shelter care hearing in January of 1991. The State argued the allegations should be deemed denied at the time the request for the adjudicatory hearing was made in February of 1992.

Without deciding when, or if, the allegations of the petition were denied, the juvenile court ruled that it had jurisdiction based upon this court's decision in *In Interest of MKM*, 792 P.2d 1369, 1374 (Wyo. 1990), where we said:

> We cannot think of a result more absurd than to cause a vulnerable child to become unprotected while under the protective wing of our court system. Under W.S. 14–6–226(b) (July 1986 Replacement), a juvenile court may either proceed immediately or hold a hearing within sixty days, but the statutes also preserve the discretion of the court to do neither if the best interests of the child are served at least until objection to the delayed hearing is asserted by a litigant.

The father characterizes this language as dicta and distinguishes the holding because of the concurrent jurisdiction the court in *In Interest of MKM* had with pending proceedings in the district court and in the juvenile court. We disagree and reaffirm the applicability of the holding of *In Interest of MKM* to proceedings in the juvenile court.

■ Our primary examination requires the use of rules for statutory interpretation which were carefully scrutinized in *Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n*, 845 P.2d 1040, 1042–45 (Wyo.1993). The vital concern of this court's inquiry is the intent of the legislature as expressed in the statute. *Id.* at 1042. Using the ordinary and obvious meaning of the statute's words, we con-

strue all sections of a statute *in pari materia*. *Id.*

■ Before we proceed, it is essential to understand how a court acquires jurisdiction. " 'Jurisdiction' is the power to hear and determine the matter in controversy between the parties." *McGuire v. McGuire*, 608 P.2d 1278, 1290 (Wyo.1980) (citing *Begley v. Nall*, 62 Wyo. 254, 166 P.2d 466 (1946)). Jurisdiction is conferred when a court has general power over matters of the type involved in the particular case; the proceeding is initiated in the particular manner required; and there is notice to the parties. *McGuire*, 608 P.2d at 1290.

■ Under our civil rules, a challenge to subject matter jurisdiction, as distinguished from personal jurisdiction, is a defense in law under W.R.C.P. 12(b)(1). A challenge to subject matter jurisdiction is never waived. *Nicholaus v. Nicholaus*, 756 P.2d 1338, 1342 (Wyo.1988). A challenge to subject matter jurisdiction may be asserted at any time by any interested party before final judgment, or in a motion for relief from judgment under W.R.C.P. 60(b), or on appeal after being overruled below. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil*, § 1350 at 200–05 (1990). The court, at trial or appellate level, may also assert a lack of subject matter jurisdiction, *sua sponte. Nicholaus*, 756 P.2d at 1339; 5A Wright & Miller, *supra*, § 1350 at 202.

Subject matter jurisdiction for juvenile courts originates in constitutional and statutory law. The Constitution of the State of Wyoming authorizes the legislature to create such juvenile courts as may be needed and provides that "[s]uch courts shall have such jurisdiction as the legislature may by law provide." Wyo.Const. art. 5 § 29. The Wyoming Juvenile Court Act of 1971, Wyo. Stat. §§ 14–6–201 to 14–6–243 (1986 & Cum.Supp.1993) (hereinafter Juvenile Court Act), provides the original jurisdiction and customary procedure for the juvenile courts of this state. General jurisdiction is granted by Wyo.Stat. § 14–6–203(a)(i) and (iii) concerning any minor alleged to be neglected and the parents, guardians or custodians of any minor alleged to be neglected. In many situations, the juvenile court's jurisdiction is concurrent with other court's jurisdiction over similar matters. *See* Wyo.Stat. § 14–6–203(c), (f), and (h). "Once the jurisdiction of the juvenile court is invoked, then the matter proceeds as a continuing and dynamic situation." *In Interest of N.M.*, 794 P.2d 564, 566 (Wyo.1990), Thomas, J., concurring, joined by Urbigkit, J.

The proceeding involving MFB was properly commenced by filing a petition in juvenile court alleging neglect by the father. Wyo.Stat. § 14–6–212(a). A neglected child is defined in Wyo.Stat. § 14–6–201(a)(xvi) as a child:

(A) Whose custodian has failed or refused to provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well being. * * *

(B) Who has been abused by the inflicting or causing of physical or mental injury, harm or imminent danger to the physical or mental health or welfare of the child, other than by accidental means, including abandonment, excessive or unreasonable corporal punishment, malnutrition or substantial risk thereof by reason of intentional or unintentional neglect, and the commission or allowing the commission of a sexual offense against a child as defined by law:

(I) "Mental injury" means an injury to the psychological capacity or emotional stability of a child as evidenced by an observable or substantial impairment in his ability to function within a normal range of performance and behavior with due regard to his culture;

(II) "Physical injury" means death or any harm to a child including but not limited to disfigurement, impairment of any bodily organ, skin bruising, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition;

(III) "Substantial risk" means a strong possibility as contrasted with a remote or insignificant possibility;

(IV) "Imminent danger" includes threatened harm and means a statement, overt act, condition or status which represents an immediate and substantial risk of sexual abuse or physical or mental injury.

The petition alleged the father had neglected and physically abused MFB while she was in his care and the supporting affidavit alleged that without State intervention, a serious risk of further injury to the child remained.

■ The juvenile court had jurisdiction over the subject matter identified in the petition under the statutory definition of neglect. Therefore, the juvenile court had the power to hear and determine the general class of cases in which this proceeding belonged. *In Interest of WM,* 778 P.2d 1106, 1111 (Wyo.1989). There is no challenge to the acquisition of personal jurisdiction over either the father or MFB. The remaining inquiry is whether, after being acquired, continuing subject matter jurisdiction required adherence to relevant procedural requirements.

The procedure for declaring a child neglected is statutory and contained in the Juvenile Court Act. Once the child is in state custody, a three-phased process commences with a shelter care hearing followed by an adjudicatory hearing which may result in a disposition hearing. *See* Kennard F. Nelson, *Comment: The Wyoming Juvenile Court Act of 1971,* VIII Land & Water L.Rev. 237 (1973). At each phase, the juvenile court makes a decision whether continued state intervention is appropriate and what form of intervention is in the best interests of the child.

■ Each hearing fulfills a statutory purpose. The informal shelter care hearing provides the juvenile court with the opportunity to determine if further shelter care is required pending later court action. Wyo.Stat. § 14–6–209(a) and (d). The adjudicatory hearing provides the juvenile court with sufficient evidence to determine if the allegations of the neglect petition are sustainable, Wyo.Stat. §§ 14–6–209(c) and 14–6–226(b), by the requisite preponderance of the evidence standard. Wyo.Stat. § 14–6–

225(a). The disposition hearing for a child found to be neglected determines what custody and placement would be in the best interests of the child. Wyo.Stat. § 14–6–229(b). If the neglected child is to be placed outside the home, the juvenile court must find by clear and convincing evidence that a return to the home is not in the best interests of the child. Wyo.Stat. § 14–6–229(a). The disposition hearing may be incorporated in the adjudicatory proceeding or be conducted as a separate proceeding. Wyo.Stat. § 14–6–226(e). Underlying each of these individual proceedings is the central purpose of the Juvenile Court Act, which is "to protect the best interest of the children who come under its jurisdiction." *In Interest of MKM,* 792 P.2d at 1374.

As previously noted, the adjudicatory hearing is discussed in two sections of the Juvenile Court Act. Wyo.Stat. §§ 14–6–209(c) and 14–6–226(b). The differences in the language of these two sections are related to the different nature of the actions and the rights involved in juvenile court proceedings. There are three basic actions heard in juvenile court: the action for a neglected child, such as the issue in this case; the action involving a child in need of supervision; and the action for a child alleged to be delinquent. *See* Wyo. Stat. § 14–6–229.

■ While there are general similarities in the procedures used by the juvenile court for these three basic actions, there are differences in the individual rights and the person to whom they attach which are relevant. *See, e.g., CH v. Campbell County D–Pass,* 699 P.2d 830 (Wyo.1985) (noting that in a neglect proceeding, the parents have a fundamental right to care and custody of a child); *Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (holding certain constitutional rights associated with criminal proceedings apply to juveniles charged as delinquents); *Prince v. Commonwealth of Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (holding when acting to guard the general interest in a child's well being, as *parens patriae,* the state may restrict the parent's

control); and Nelson, *supra*, VIII Land & Water L.Rev. at 238–39. Therefore, statutory provisions and case authority pertaining to delinquency proceedings may not be applicable to neglect proceedings. *State In Interest of C*, 638 P.2d 165, 171 (Wyo.1981). It is essential to observe the proper procedural requirements to determine which provision is applicable to a given situation.

▪ When a child is placed in shelter care without a court order, as with MFB, the provisions of Wyo.Stat. § 14–6–209(c) govern:

> The child or in cases of neglect the parents, guardian or custodian shall be given an opportunity to admit or deny the allegations in the petition. If the allegations are admitted, the court shall make the appropriate adjudication and may proceed immediately to a disposition of the case in accordance with the provisions of W.S. 14–6–229. If denied, the court shall set a time not to exceed sixty (60) days for an adjudicatory hearing or a transfer hearing.

*See In Interest of AB*, 839 P.2d 386, 389 (Wyo.1992). The provisions of Wyo.Stat. § 14–6–226(b), which the father originally relied upon, are substantially similar:

> If the allegations of the petition are denied, the court may, with consent of the parties, proceed immediately to hear evidence on the petition or it may set a later time not to exceed sixty (60) days for an adjudicatory or a transfer hearing. Only competent, relevant and material evidence shall be admissible at an adjudicatory hearing to determine the truth of the allegations in the petition. If after an adjudicatory hearing the court finds that the allegations in the petition are not established as required by this act, it shall dismiss the petition and order the child released from any detention or shelter care.

The purpose of both provisions is to insure that prolonged pre-hearing detention of the child does not occur. *See In re Kerr*, 333 Pa.Super. 67, 481 A.2d 1225, 1227 (1984) (holding the purpose of a similar Pennsylvania Juvenile Code provision calling for adjudicatory hearing within ten days is to prevent lengthy pre-hearing confinement).

The father contends that the juvenile court must *hold* a final adjudication within sixty days of the time the allegations of the petition are denied. From the failure to hold a timely hearing, the father determines that the juvenile court loses subject matter jurisdiction. This argument is not persuasive.

▪ The father reads a command to *hold* an adjudicatory hearing into the provisions of Wyo.Stat. §§ 14–6–209(c) and 14–6–226(b) that is simply not present. Both provisions, once the allegations of a petition are denied, permit the juvenile court to proceed immediately or to "*set*" a time "not to exceed sixty (60) days" for an adjudicatory hearing or a transfer hearing to district court. Wyo.Stat. §§ 14–6–209(c) and 14–6–226(b) (emphasis added). The operative verb is "set." The legislature has called upon the juvenile court to "set down" a cause for hearing which requires entering the title of the action in the court's calendar. Black's Law Dictionary 1372 (6th ed. 1990). The plain language used by the legislature does not require the juvenile court to hold an adjudicatory hearing within the sixty-day period as the father suggests.

▪ The juvenile court has the authority to act with discretion in its calendaring process. Under the Juvenile Court Act, "'[a]djudication' means a finding by the court or the jury, incorporated in a decree, as to the truth of the facts alleged in the petition[.]" Wyo.Stat. § 14–6–201(a)(i). In permitting jury trials when demanded, the legislature also made a definite statement about the juvenile court's ability to schedule proceedings. "The court may, on motion of any party or on its own motion, *continue or defer any hearing* as the work of the court or justice requires." Wyo. Stat. § 14–6–224(d) (emphasis added). The discretion granted juvenile courts in scheduling is essential in light of the fact Wyoming does not have an exclusive system of juvenile courts. The district court judges also serve as the juvenile court judges. Wyo.Stat. § 14–6–202(a). The provisions of

Wyo.Stat. § 14–6–224(d), therefore, must be read together with the provisions of Wyo.Stat. §§ 14–6–209(c) and 14–6–226(b) to produce a harmonious result. *Parker Land and Cattle Co.*, 845 P.2d at 1042.

■ There is no finding or evidence in the record of when the father denied the allegations contained in the petition. No transcript is of record from the shelter care hearing and no documents from that proceeding indicate a denial was made by the father. The fact the father stipulated to the custody arrangement is not a sufficient basis to presume that the father either admitted or denied the allegations of the petition. The request for the review hearing in October of 1991 and the argument presented during that hearing cannot constitute a denial, since the allegations of the petition were never specifically addressed.

■ One point in the record in which we may presume a denial of the allegations occurred is in January of 1992 when the father made a motion to the juvenile court to set an adjudicatory hearing. The juvenile court set the hearing for February 10, 1992, within the sixty-day period mandated by Wyo.Stat. § 14–6–209(c). That hearing had to be continued in the interests of justice because of the failure of the father to request sufficient time for the proceeding. Wyo.Stat. § 14–6–224(d). The granting of a continuance is a matter for the discretion of the trial court and its ruling will not be disturbed on appeal without a clear abuse of that discretion. *In Interest of AB*, 839 P.2d at 390. We find no abuse of discretion in this continuance.

■ Furthermore, even if the father denied the allegations of the petition at the time of the shelter care hearing in January of 1991, or we presume a denial at that time, the failure to set an adjudicatory hearing within sixty days would not result in a loss of jurisdiction by the juvenile court. The language used by the legislature in Wyo.Stat. §§ 14–6–209(c) and 14–6–226(b) does not inhibit the juvenile court's subject matter jurisdiction. The legislature imposed no sanction for the failure of the juvenile court to set a time for a hearing within sixty days. We hold that it would require an unequivocal expression from the legislature for a violation of the statute's language to result in a lack of subject matter jurisdiction. *In re Kerr*, 481 A.2d at 1227. We do not find such unequivocal language in Wyo.Stat. §§ 14–6–209(c) and 14–6–226(b). Therefore, as a matter of law, the failure to set an adjudicatory hearing within sixty days of the denial of allegations contained in a petition invoking juvenile court jurisdiction does not result in a loss of that court's subject matter jurisdiction. Additionally, the father's absence from the jurisdiction for eighteen weeks following the shelter care hearing and his failure to complete the first psychological evaluation made it impossible to set a hearing within sixty days.

Other states that have addressed jurisdictional questions resulting from delayed adjudicatory hearings in juvenile court have drawn similar conclusions. In an application for extraordinary relief, following a neglect proceeding, the Supreme Court of Ohio held that the juvenile court did not lose jurisdiction by failing to conduct an adjudicatory hearing within that state's ten-day requirement. *Linger v. Weiss*, 57 Ohio St.2d 97, 386 N.E.2d 1354, 1355–56, *cert. denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979). *Accord In re Kerr*, 481 A.2d at 1227 (holding under Pennsylvania law that failure to schedule an adjudicatory hearing within the ten-day statutory limit does not result in loss of jurisdiction). In *Linger*, a two-month old child was placed in foster care for almost three years before an adjudicatory hearing was finally held despite the ten-day adjudicatory hearing requirement. *Linger*, 386 N.E.2d at 1355 n. 2.

In considering the requirement for an adjudicatory hearing in a New Jersey delinquency action where the alleged delinquent's speedy trial rights were implicated, the court determined that a requirement to schedule a hearing within thirty days was a "calendaring device to constantly remind juvenile court judges that detention cases must move expeditiously and with priority." *State In Interest of C.B.*, 173 N.J.Su-

per. 424, 414 A.2d 572, 574, *cert denied*, 84 N.J. 482, 420 A.2d 1303 (1980). The court noted that the applicable provision in New Jersey law failed to mandate a dismissal of delinquency charges or even a release from detention for failure to commence a timely hearing. *Id.*

In holding that the failure to set an adjudicatory hearing within sixty days does not result in a loss of subject matter jurisdiction, we are cognizant of the need for a proper remedy for the failure to set a timely hearing under Wyo.Stat. §§ 14–6–209(c) and 14–6–226(b). In this proceeding, after the juvenile court denied the father's motion to dismiss, a Petition For Writ of Certiorari was filed with this court. This court treated the matter as a Petition for a Peremptory Writ of Mandamus, which was granted. After a motion by the State to stay the preemptory writ of mandamus was granted, this court denied a rehearing. As a result, an order was issued which stayed the effective date of the preemptory writ of mandamus for twenty days to permit the juvenile court to hold an adjudicatory hearing.

 The proper remedy for a failure to set an adjudicatory hearing within the time constraints of Wyo.Stat. §§ 14–6–209(c) and 14–6–226(b) is a motion to the juvenile court for a prompt hearing brought by the minor through the guardian ad litem, Wyo.Stat. § 14–6–216, or brought by the parents, guardians or custodian named in the petition as parties to the proceeding, Wyo.Stat. § 14–6–201(a)(xvii). *See* W.R.C.P. 7(b). If such motion is not acted upon in a timely fashion, then a petition for a writ of habeas corpus may be filed in this court seeking release of the minor. Wyo.Const. art. 5 § 3. *See Linger*, 386 N.E.2d at 1356 and *In re Kerr*, 481 A.2d at 1227–28.

### B. *Admission of Evidence*

Next, the father asserts that the juvenile court erred in permitting evidence to be introduced at the adjudicatory hearing of events which occurred after MFB was placed in State custody. Specifically, the father objects to the relevancy of the diag-

nostic testimony of the counselor and the child psychiatrist that MFB suffered from Post Traumatic Stress Disorder. We do not find error in the admission of this testimony.

 Rulings on the admissibility of evidence are subject to the discretion of the court in which the proceeding is being heard and without an abuse of such discretion, the ruling will not be disturbed on appeal. *L.U. Sheep Co. v. Board of County Com'rs of County of Hot Springs*, 790 P.2d 663, 673 (Wyo.1990). Rulings on relevancy are included within the discretionary sphere of the trial court and will be upheld unless that discretion has been abused. *Id.*

 We reject the thesis that only evidence that existed at the time the child was removed from the father's custody should be presented at the adjudicatory hearing. *See, e.g., In re A.M.*, 365 Pa.Super. 516, 530 A.2d 430, 435 (1987) (permitting hearsay testimony from foster mother regarding statements children made while in custodial care) and 1 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States*, § 10.4 at 612 (2nd ed. 1987) (discussing typical abuse case requiring evidence from an examining physician or other medical expert that injury did not result from accident which is countered by parental testimony that injury was accidental). The Juvenile Court Act specifically recognizes that after jurisdiction is acquired, the court may order examination of a child by medical personnel "to aid in determining the physical and mental condition of the child." Wyo.Stat. § 14–6–219(a).

During the questioning of the counselor and the child psychiatrist, adequate foundation was laid that the diagnosis of the Post Traumatic Stress Disorder resulted from trauma suffered while MFB was in the custody of the father. The testimony provided the juvenile court with relevant evidence on MFB's condition and its origin which supported a finding of neglect. W.R.E. 401. *See In re Stephen W.*, 221 Cal.App.3d 629, 271 Cal.Rptr. 319, 324 (1990) (holding prima facie showing of parental inability to provide for minor's care

is made by competent professional evidence that injury has been sustained which would ordinarily not be sustained without unreasonable or neglectful action). The juvenile court, therefore, did not abuse its discretion in permitting this testimony.

In addition, evidence introduced at the adjudicatory hearing from the period when MFB was in the father's custody supported a finding of neglect. The testimony of the paternal grandparents provided evidence of physical abuse. The testimony of the maternal grandmother detailed the fact that MFB was suffering from sleeplessness and other mental disorders which the father refused to permit to be treated. While the father is correct that at the time of the filing of the petition no diagnosis of these symptoms had been made by competent professionals, the State is not required to wait until catastrophic injury occurs to act. *In re Interest of J.S.*, 499 N.W.2d 89, 92 (Neb.App.1993). Apart from the physical abuse, the failure or refusal to provide necessary medical care is itself evidence of neglect which is sufficient to support the allegations of the petition and a finding of neglect. Wyo.Stat. § 14–6–201(a)(xvi)(A). *See* 1 Clark, *supra*, § 10.3 at 591 (stating that parent has both a right and a duty to provide psychiatric care for a child in the same manner that a right and duty exists to provide medical or surgical care).

### C. Findings of Neglect

Finally, the father asserts that the juvenile court's order failed to make a necessary finding that abuse or neglect had occurred. We hold that the juvenile court's order is sufficient.

In Wyoming, a court is not required to state its findings, except in general terms, unless one of the parties requests special findings before the presentation of evidence. W.R.C.P. 52. *See Hopper v. All Pet Animal Clinic, Inc.*, — P.2d — (Wyo.1993) (Nos. 92–254 & 92–255, decided 10/1/93). No request for specific findings is of record in this proceeding. Without a request for findings under W.R.C.P. 52, this court considers that the general finding by the juvenile court carries with it

every finding of fact which is supported by the record. *In Interest of N.M.*, 794 P.2d at 565; *Deroche v. R.L. Manning Co.*, 737 P.2d 332, 335 (Wyo.1987); *Brug v. Case*, 600 P.2d 710, 715 (Wyo.1979). *See Matter of Welfare of C. Children*, 348 N.W.2d 94, 97 (Minn.App.1984) (holding that in neglect proceedings, although findings were not specific, they were sufficient for review when supplemented by the record).

The failure to make a specific finding of parental neglect was considered when this court decided *State In Interest of C*, 638 P.2d at 172. The parent contesting the finding of neglect in that case said the language of the predecessor to Wyo.Stat. § 14–6–226(c) required a specific finding of neglect. In determining that the statutory command had been fulfilled, this court referred to comments made from the bench and language from the juvenile court's order which was "tantamount to a finding of neglect." *State In Interest of C*, 638 P.2d at 172.

We are satisfied that the juvenile court's order and determinations made from the bench during the adjudicatory hearing reflect a sufficient finding of neglect as defined by Wyo.Stat. § 14–6–201(a)(xvi). The order states a general finding:

> FURTHER, THE COURT SPECIFICALLY FINDS the allegations of the petition after hearing and takes jurisdiction over this mat[t]er[.]

In comments from the bench during the ruling against the father's motion to dismiss, the juvenile court determined that physical abuse and neglect had occurred when the father slapped MFB in the presence of the paternal grandparents. At the conclusion of the adjudicatory hearing and disposition proceeding, the juvenile court found that MFB suffered from Post Traumatic Stress Disorder which had been untreated until State intervention occurred. Furthermore, the juvenile court found that the father suffered from clinical disorders which required successful counseling prior to any attempt at reunification of the family. These findings meet the requisite stan-

dard of *State In Interest of C*, 638 P.2d at 172 to adjudge MFB to be neglected by a preponderance of the evidence. Wyo.Stat. § 14–6–225(a).

■ Once it is determined that a child is neglected, the juvenile court makes a disposition as provided in Wyo.Stat. § 14–6–229. We are satisfied that clear and convincing evidence, including MFB's cognizable fear of harm from the father, supports the finding that a return of MFB to the father's custody would not be in the best interests of the child. Wyo.Stat. § 14–6–229(a). Among the permissible alternatives for placement of a neglected child is a transfer of temporary legal custody to a state agency. Wyo.Stat. § 14–6–229(b)(v). The order in this proceeding transferred custody without a clear declaration that it is temporary. Using our power to modify a judgment, *In Interest of MKM*, 792 P.2d at 1376, we remand to the juvenile court to issue an order conforming with Wyo.Stat. § 14–6–229(b)(v), stating that the Department of Family Services is granted temporary legal custody of MFB.

### D. *The Role of the Guardian Ad Litem*

While not placed at issue by the parties, this court must direct some attention to the role of the guardian ad litem in this proceeding. *See In Interest of AB*, 839 P.2d at 390 (addressing issue not argued on appeal but injected through correspondence contained in the record). Letters from both the maternal and paternal grandparents of MFB are contained in the record which object to the representation of the guardian ad litem and request the appointment of a new guardian ad litem. Both letters were forwarded by the juvenile court to the guardian ad litem "for appropriate action." However, no record exists of any subsequent action by the guardian ad litem regarding these objections.

The challenged guardian ad litem appeared at the adjudicatory hearing and made some recommendations. However, she asked no questions of any witnesses and offered no briefing on behalf of MFB. In addition, the guardian ad litem did not participate in this appeal on behalf of MFB's interests. Of particular interest, given the jurisdictional and procedural questions in this appeal, is that at no time did the guardian ad litem make a motion to the juvenile court to move these proceedings forward.

■ Despite these concerns, we cannot say that MFB's interests were unfairly prejudiced by the continued representation or diligence of the guardian ad litem. However, we would remind all members of the bar serving in this capacity that the guardian ad litem fulfills an essential duty. In appointing a guardian ad litem, the juvenile court has determined that either the child has no parent, guardian or custodian appearing in its behalf or that the interests of the parent, guardian or custodian are adverse to the best interests of the child. Wyo.Stat. § 14–6–216. Therefore, the guardian ad litem must act with reasonable diligence in the role of an advocate for the child, Wyo.R.Prof.Cond. 1.3, and participate as necessary in all phases of the process, including subsequent appeals, to insure the rights of the client are protected. *See* Wyo.R.Prof.Cond. 1.14.

### IV. CONCLUSION

The order of the juvenile court is affirmed as modified and the proceeding is remanded for additional action consistent with the juvenile court's continuing jurisdiction in the best interests of the child.